UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

M.M.,

    Plaintiff,

v.

MARTIN O'MALLEY,

    Defendant.

Case No. 23-cv-03867-PCP

**ORDER REVERSING DECISION AND REMANDING APPLICATION**

Re: Dkt. Nos. 1, 11, 15

Plaintiff M.M. filed this action against the Commissioner of the Social Security Administration[1] claiming that he was improperly denied disability insurance benefits after an administrative hearing. For the reasons set forth below, the agency's decision is reversed and M.M.'s application is remanded for reconsideration of his symptom testimony.

**I.    Background**

M.M. worked for nearly 30 years as a UPS driver. Transcript, Dkt. No. 10, at 283. He had a heart attack in August 2020 and applied for Social Security Disability Insurance the next month, reporting that the heart attack and a back injury were limiting his ability to work. Tr. 282. M.M.'s disability claim was denied both initially and on reconsideration. Tr. 85, 105. He appealed. Tr. 126. An administrative law judge (ALJ) held a hearing in March 2022, Tr. 36, and issued a written decision in July 2022, Tr. 13. The ALJ concluded that M.M. was not disabled as defined in the Social Security Act for the period beginning August 3, 2020. Tr. 17.

---

[1] Martin O'Malley became the Commissioner after this action was filed. He was substituted in as the defendant in this action upon his entrance into office, and the caption has been updated accordingly. *See* 42 U.S.C. 405(g).

The ALJ found the following facts in her written decision. In August 2020, M.M. was admitted to the hospital after several days of chest pain and dizziness. He was diagnosed with acute myocardial infarction and coronary artery disease. His heart was catheterized and a stent was placed in his lower anterior descending artery. As of July 2022, M.M. had not engaged in substantial gainful activity since the August 2020 heart attack. M.M. had several severe, medically determinable impairments, including lumbar degenerative disc disease (following a fusion), coronary artery disease, and obesity. M.M. also had several additional physical and mental impairments determined not to be severe, including depression and alcohol use disorder. M.M. had been treated for his back pain and depression, and had also told medical providers he suffered from insomnia and reported thinking about suicide. Although medical records reflected that M.M. had mild obstructive sleep apnea, absent a sleep study or other objective findings this was not considered a medically determinable impairment.

The ALJ concluded that M.M. was not disabled because he was still capable of performing light work, including as a bus driver—a job M.M. had previously held.

M.M. appealed the ALJ's decision to the Appeals Council, which denied his request for review in June 2023. Tr. 7. M.M. then filed this action for judicial review of the ALJ's decision pursuant to Section 205 of the Social Security Act, 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of final Social Security Agency decisions. This review is based only on "the pleadings and transcript of the record." 42 U.S.C. § 405(g). The record transcript must be submitted by the agency, and must include "the evidence upon which the findings and decision complained of are based." *Id.* The agency's "findings … as to any fact, if supported by substantial evidence, shall be conclusive." *Id.* Thus the agency's decision must be upheld unless "it is not supported by substantial evidence or is based on legal error." *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court can affirm, modify, or reverse the agency's decision, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g).

### III. Analysis

#### A. The ALJ Did Not Fail To Develop the Record.

"In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). "The ALJ is not a mere umpire at such a proceeding: it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930 (9th Cir. 2014) (cleaned up). This duty is triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation." *Mayes*, 276 F.3d at 459–60.

The record includes treatment notes from two visits in late 2020 indicating that M.M. was experiencing lower back pain and noting that he had been receiving treatment through worker's compensation. Tr. 484, 486, 500. Before his hearing with the ALJ, M.M. submitted around 2,000 pages of additional records. This exhibit included M.M.'s worker's compensation records from 2013 to 2018. The ALJ remarked that the submission was "full of duplicates" and "a lot of things that just aren't even medical evidence." The ALJ stated that she "did look through them to see if … there was anything that wasn't represented in the current record," but "didn't find anything at all." Tr. 41. M.M.'s counsel stated that these records were "general background" but did not argue, when questioned, that the submission would inform the ALJ's determination of M.M.'s ability to function after August 3, 2020. Tr. 42. The ALJ declined to admit the submission, but offered M.M. the opportunity to resubmit the submission with the duplicate documents removed. Tr. 42. M.M.'s counsel stated that this would not be necessary and that testimony would suffice. Tr. 42.

The ALJ did not fail to develop the record. M.M. does not point to any evidence he argues was ambiguous. And it does not appear that the record the ALJ did consider (excluding the workers compensation records) was inadequate to consider M.M.'s history of and treatment for back pain. Medical records in the transcript explain that M.M. had been treated for back pain through workers compensation. And the ALJ specifically found that M.M. was severely impaired by lumbar degenerative disc disease, and discussed M.M.'s chronic lower back pain and medication for that pain in the decision. Moreover, the transcript indicates that the ALJ did review

3

1  the workers compensation records, and both the ALJ and M.M.'s counsel agreed that the records
2  (which covered a five-year period ending two years before M.M. suffered a heart attack and in his
3  view became disabled) added nothing more to M.M.'s claims than general background. The ALJ
4  was therefore not obligated to further develop the record with respect to M.M.'s back pain.

5        M.M. has also submitted, "as an offer of proof regarding the materiality of the ALJ's
6  error," copies of his workers compensation treatment records ranging from November 2017
7  through 2023. But these do not appear to be the same records the ALJ declined to consider at
8  M.M.'s March 2022 hearing, which covered a period from 2013 to 2018. And more
9  fundamentally, whether an ALJ is obligated to further develop a record is determined based on the
10 evidence already in that record, not potential additional evidence that could be included. If the
11 record is ambiguous or inadequate, the ALJ must supplement it. But because, as discussed above,
12 the record before the ALJ here was not insufficient, the fact that other relevant evidence may have
13 existed but was not included in the record does not itself establish a failure to develop the record.

### B. The ALJ Did Not Articulate Specific, Clear and Convincing Reasons for Rejecting Symptom Testimony.

16       The Social Security Act defines "disability" as "inability to engage in any substantial
17 gainful activity by reason of any medically determinable physical or mental impairment which can
18 be expected to result in death or which has lasted or can be expected to last for a continuous period
19 of not less than 12 months." 42 U.S.C. § 423(d)(1).

20       The agency uses a five-step process to evaluate whether a claimant is disabled. 20 C.F.R.
21 § 416.920(a)(4). At step one, the agency considers the claimant's work activity. A claimant "doing
22 substantial gainful activity" is not considered disabled. At step two, the agency considers the
23 medical severity of the claimant's impairments. A claimant who does not have sufficiently severe
24 and prolonged physical or mental impairments (individually or in combination) is not considered
25 disabled. At step three, the agency determines whether the claimant's impairments meet (or equal)
26 certain listed impairments which automatically qualify a claimant as disabled. If they do not, then
27 before proceeding, the agency determines the claimant's "residual functional capacity"— "the
28 most [the claimant] can still do despite [the] limitations." 20 C.F.R. § 416.945. At step four, the

agency considers, based on this residual functional capacity, whether the claimant can still do their past relevant work. A claimant who can is not considered disabled. Finally, at step five, the agency considers, based on the residual functional capacity, whether the claimant can "adjust" to other work. Only if the claimant cannot adjust to other work will the agency find a disability.

In short, the agency considers some impairments so mild that they can never render someone disabled, while others are so severe that they always render someone disabled. But for any impairments between those extremes, whether someone is disabled will depend on their individually-assessed residual functional capacity and how it compares to their past relevant work or other potential alternatives. For claimants like M.M. who fall in this middle camp, much hinges on the ALJ's consideration of their residual functional capacity.

The agency assesses a claimant's residual functional capacity "based on all the relevant evidence in [the] case record." 20 C.F.R. § 416.945(a)(1). The agency considers all of a claimant's medically determinable impairments, including any that are not considered severe, in making this determination. The agency considers all "relevant medical evidence" as well as "descriptions and observations of [a claimant's] limitations from … impairment(s), including limitations that result from … symptoms, such as pain." 20 C.F.R. § 416.945(a)(3). These observations can be provided by a claimant or by their family, friends, or others.

If a claimant submits subjective symptom testimony, there is a two-step test for determining whether the testimony is credible:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that their impairment could reasonably be expected to cause the severity of the symptom they have alleged; they need only show that it could reasonably have caused some degree of the symptom. Further, the claimant is not required to produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
>
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of their symptoms only by offering specific, clear and convincing reasons for doing so. The clear and convincing standard is the most demanding required in Social Security cases.

5

> Ultimately, the clear and convincing standard requires an ALJ to show their work. If the ALJ fails to provide specific, clear, and convincing reasons for discounting the claimant's subjective symptom testimony, then the ALJ's determination is not supported by substantial evidence.

*Ferguson*, 95 F.4th at 1199 (cleaned up).[2]

The ALJ summarized M.M.'s testimony regarding the "intensity, persistence, and limiting effects of his symptoms" as follows:

> The claimant testified that he has insomnia, and that his symptoms have worsened. He indicated that he takes medication for depression which causes him to feel foggy and loopy, and that is unable to sit or stand as long due to swollen knees and a constant burning in the feet. He testified that he watches television and walks the dog, and that he must sit or lay down for a couple of hours during the day due to pain. He indicated that he has difficulty concentrating and that he feels irritable. Further, the claimant stated that he experiences low back pain, hip pain, and knee pain, and that his other medication causes pain including cloudiness and fatigue. He reported that he is able to stand for 10-15 minutes, and that he walks the dog less than a quarter of a mile.

Tr. 24. M.M.'s summary of his testimony is substantially the same. Dkt. No. 11, at 3.

Applying the first step of the subjective symptom testimony analysis, the ALJ concluded that M.M.'s "medically determinable impairments could reasonably be expected to cause at least some of the alleged symptoms." Tr. 24. The ALJ did not find any evidence of malingering. The ALJ then concluded that M.M.'s "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 24.

The agency's analysis fails substantial evidence review because the ALJ did not offer specific, clear, and convincing reasons for rejecting M.M.'s symptom testimony. The opinion states that the medical evidence "cannot be fully reconciled with" and "does not support" M.M.'s

---

[2] The government argues that the "clear and convincing" standard is inconsistent with the substantial evidence standard set forth in the Social Security Act, 42 U.S.C. § 405(g). *See* Dkt. No. 15, at 3 n.3. As the Ninth Circuit's decision in *Ferguson* makes clear, though, the requirement that an ALJ offer clear and convincing reasons for rejecting subjective symptom testimony is itself an *application* of the statutory substantial evidence standard.

"alleged level of limitation." Tr. 24–25. "Treatment notes in the record," the opinion concludes, "do not sustain the claimant's allegations of disabling pain and limitations." Tr. 27. But "an ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony when there is no objective testimony evincing otherwise." *Smartt*, 53 F.4th at 498. In other words, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to *fully corroborate* the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ's opinion discusses the relevant medical evidence at length. But it does not identify any specific inconsistencies between M.M.'s alleged symptoms and other medical findings. As the Ninth Circuit has held, "providing a summary of medical evidence is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020). Moreover, the opinion does not identify which of M.M.'s alleged symptoms or limitations the ALJ is discounting or why. Instead, the opinion simply concludes that the claimant "does experience some levels of pain and limitations but only to the extent described in the residual functional capacity above." Tr. 27. This analysis is backwards. A claimant's residual functional capacity is defined in terms of their limitations, not vice versa. *See* 20 C.F.R. § 416.945(a)(1). The ALJ's opinion recognized that M.M. alleged he experienced back, hip, and knee pain and could only stand for 10-15 minutes at a time and walk less than a quarter mile. Tr. 24. But the ALJ then concluded that M.M. could handle work that involved "frequent lifting or carrying of objects weighing up to 10 pounds" and "requir[ing] a good deal of walking or standing." 20 C.F.R. § 404.1567(b) (definition of "light work"). The opinion does not adequately explain why M.M.'s symptoms were discounted to reach this apparently contradictory conclusion.

An ALJ does not need to "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Lambert*, 980 F.3d at 1277.  But the agency must offer more than "non-specific conclusions." *Id*. Because the ALJ in M.M.'s case did not "show their work" to the degree required, the determination of M.M.'s residual functional capacity was conclusory and not supported by substantial evidence. *See Ferguson*, 95 F.4th at 1199. The

7

1   Commissioner's decision is therefore reversed and M.M.'s application is remanded to the agency
2   for a redetermination of his residual functional capacity in accordance with this order, including
3   proper consideration of the subjective testimony.

**C.     The ALJ Did Not Clearly Address M.M.'s Insomnia Allegations.**

M.M. also argues that the ALJ failed to properly consider his insomnia, both at the step-two consideration of whether his impairments were severe and in determining his residual functional capacity.

As the Ninth Circuit has explained, the second step of the five-step analysis "is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). Because this step "is not meant to identify the impairments that should be taken into account when determining the [residual functional capacity]," the residual functional capacity analysis should in theory "be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.* at 1048–49.

Here, although the ALJ did not determine that any of M.M.'s mental impairments were severe, the ALJ determined that other impairments were severe and therefore proceeded to evaluate M.M.'s residual functional capacity. Any failure to properly consider M.M.'s insomnia at step two cannot without more be the basis for remand. *Buck*, 869 F.3d at 1049.

The question is then whether the ALJ properly considered M.M.'s insomnia in determining his residual functional capacity. In the residual functional capacity analysis, the ALJ specifically noted that M.M. had testified that he had insomnia with worsening symptoms. The ALJ also determined that based on his fatigue from insomnia, M.M. should be precluded from climbing or working at unprotected heights. Tr. 26–27. Still, it is not entirely clear whether the ALJ fully accepted M.M.'s symptom testimony in determining his residual functional capacity or instead implicitly discounted some of his claimed symptoms and limitations. As discussed above, while the ALJ determined that the "medical evidence does not support the alleged level of limitation arising from [M.M.'s] impairments," the ALJ does not clearly identify which symptoms or limitations she discounted in concluding that M.M. was capable of performing light work. Thus, on remand, the agency must fully consider all of M.M.'s claimed symptoms, including his

8

insomnia, and clearly explain which testimony is accepted and which is discounted and provide clear and convincing reasons for any testimony that is discounted.

### IV. Conclusion

For the foregoing reasons, the Commissioner's decision is reversed and M.M.'s application is remanded to the agency for reconsideration of his residual functional capacity in accordance with this order.

**IT IS SO ORDERED.**

Dated: May 6, 2024

_____
P. Casey Pitts
United States District Judge